UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------x

CARROLL O'QUINN,

              Plaintiff,

    -v-                                    No.  19-CV-9663-LTS-RWL

CITY OF NEW YORK, et al.,

              Defendants.

-------------------------------------------------------x

### MEMORANDUM ORDER

        Pro se plaintiff Carroll O'Quinn asserts claims for violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. section 2000e et seq. ("Title VII"), 42 U.S.C. section 1981 ("Section 1981"), the Americans with Disabilities Act, 42 U.S.C. section 12101 et seq. (the "ADA"), New York Executive Law section 290 et seq. (the "NYSHRL"), and New York City Administrative Code section 8-101 et seq. (the "NYCHRL"), against defendants the City of New York, the New York City Department of Sanitation ("DSNY"), Erica Glinsky, and Chief Hancock (together, "Defendants"), all arising out of Plaintiff's employment with the DSNY between August 2017 and October 2018.

        Defendants now move for partial dismissal of Plaintiff's Amended Complaint (docket entry no. 19 ("Am. Compl.")) pursuant to Federal Rule of Civil Procedure 12(b)(6).  The Court has jurisdiction of this action pursuant to 28 U.S.C. sections 1331 and 1367.  The Court has reviewed the parties' submissions thoroughly and, for the following reasons, Defendants' motion is granted in part and denied in part.

BACKGROUND

The following allegations are taken from the Amended Complaint, unless otherwise noted, and are presumed true for the purposes of this motion.

Plaintiff is an African American male who was employed as a sanitation worker at DSNY's Brooklyn 4 garage between approximately August 14, 2017, and October 17, 2018. (Am. Compl. ¶¶ 10-11; see also docket entry no. 33-1 ("EEOC Charge")[1].)  During that time, Defendant Glinsky was the Superintendent at DSNY Brooklyn 4 garage.  (Am. Compl. ¶ 7.) Chief Hancock was "the Chief at DSNY."  (Id. ¶ 8.)

Alleged Race and Color Discrimination

"From the first month of Plaintiff's employment and until termination," Plaintiff was subject to "racial slurs and other racially offensive comments by his co-workers and supervisors at DSNY's Brooklyn 4 garage."  (Am. Compl. ¶ 15.)  For instance, in September 2017, a white co-worker of Plaintiff's named Nick approached Plaintiff and said "What's up [N-word]."  (Id. ¶ 16.)  Though Plaintiff explained that this was an offensive comment, the same co-worker approached Plaintiff two weeks later, in the supervisors' office and with two supervisors present, and said "What's up my [N-word.]"  (Id. ¶¶ 17-19.)  Despite a union representative discouraging Plaintiff from filing a report about the incident, Plaintiff filed an incident report. (Id. ¶¶ 23-25.)  Nonetheless, in November 2017, the same co-worker again greeted Plaintiff by

---

[1]   The EEOC Charge is referenced in paragraph 2 of the Amended Complaint, is a precondition to litigation of certain of Plaintiff's federal claims, and was drafted by Plaintiff.  The Court may therefore consider it in connection with this motion.  See Collins v. City of New York, 156 F. Supp. 3d 448, 456 n.4 (S.D.N.Y. 2016) ("[T]he Court may—and will—consider the EEOC charge in deciding Defendants' motion to dismiss."); Taylor v. City of New York, 207 F. Supp. 3d 293, 299 (S.D.N.Y. 2016) ("'Courts in this Circuit have repeatedly held that when EEOC charges are expressly referred to in the pleading, they may be considered incorporated by reference,' and thus may be considered when deciding a motion to dismiss." (citation omitted)).

saying "hey what's up my [N-word]," this time in the presence of "[o]ver ten other sanitation workers."  (Id. ¶ 26.)  On another occasion, in the summer of 2018, a white co-worker of Plaintiff's told Plaintiff "we didn't say anything when you had your president," "referring to President Obama."  (Id. ¶ 32.)  A shop steward "physically placed himself between the two men to prevent the incident from escalating."  (Id. ¶ 33.)  Plaintiff further alleges generally that, "[d]uring the term of his employment, Mr. O'Quinn was repeatedly and openly subjected to racial slurs by a White superintendent and other White sanitation workers."  (Id. ¶ 34.)

　　　　　　During his employment, Plaintiff "was also assigned to the most difficult, dirty, and least desirable jobs," while "White coworkers and workers with less seniority" were not. (Am. Compl. ¶¶ 37-38.)  On one occasion, in October 2017, Plaintiff was sent to Brooklyn 2 garage to "clean in and around the hopper of a decommissioned collection truck that ha[d] been sitting in the garage for several months" (id. ¶ 39), despite Brooklyn 2 garage not being Plaintiff's "assigned garage" and there "being a large number of available White workers in the garage at the time."  (Id. ¶ 41.)  Plaintiff was "the only one assigned to be transferred from Brooklyn 4 garage, despite there being White sanitation workers with less seniority (workers hired more recently than him or workers with lower list numbers) at his assigned (Brooklyn 4) garage."  (Id. ¶ 43.)  On another occasion, in September 2017, Plaintiff was "transferred to a Staten Island garage where he was asked to drive a truck containing radioactive material," without "safety gear or protection equipment" or "a proper license to drive the hazmat truck." (Id. ¶¶ 44-50.)  A white co-worker from Brooklyn 4 garage drove Plaintiff to and from the Staten Island garage, but did not get "inside the radioactive truck."  (Id. ¶ 47.)  Plaintiff alleges that "the use of seniority to determine job assignments within DSNY should have prevented Plaintiff from

receiving these assignments," and that the "most plausible inference" for why he nonetheless did is that he was assigned these tasks on account of his race.  (Id. ¶ 51.)[2]

A few months before Plaintiff was terminated, in the "summer of 2018," Plaintiff went to Defendant Glinksy's office to submit a request for authorized leave in order to attend his son's collegiate sporting event.  (Am. Compl. ¶¶ 28-29.)  After he dropped off the request form, Plaintiff sat down in a secluded area of Defendant Glinsky's office.  From there, he heard Defendant Glinsky say: "this fucking [N-word.]"  (Id. ¶¶ 29-30.)  Defendant Glinsky then exited her office "and looked visibly startled when she saw Plaintiff."  (Id. ¶ 31.)[3]

The Day of Plaintiff's Termination

On or about October 17, 2018, "Plaintiff was called into the office where an unknown White male and Defendant Glinsky told him that his employment was being terminated."  (Am. Compl. ¶ 53; EEOC Charge.)  When Plaintiff asked why he was being terminated, "Defendant Glinsky responded by saying 'we don't have to give a reason,' referring to Plaintiff's status as a probationary employee."  (Am. Compl. ¶ 54; EEOC Charge ("On October 17, 2018[,] . . . Erica Glinsky terminated me for no reason.").)  During the same exchange, Defendant Glinsky asked Plaintiff to return his DSNY badge, and Plaintiff replied that he "left the badge in his personal car but that he would retrieve it shortly."  (Id. ¶ 66.)  In

---

[2]    Plaintiff names three white co-workers from Brooklyn 4 garage with "less seniority than Plaintiff but who had not received such undesirable assignments."  (Am. Compl. ¶ 52).

[3]    According to Plaintiff, "[u]pon information and belief, DSNY never took steps to discipline Nick, Defendant Glinsky, or any other DSNY employee for their inappropriate conduct towards Plaintiff," and "never [took] any steps to prevent discriminatory harassment in the Brooklyn 4 garage, for instance by conducting training or establishing policy against discriminatory harassment."  (Am. Compl. ¶¶ 35-36.)

response, "Defendant Glinsky began shouting expletives and slurs at Plaintiff because he did not have the badge on him to return."  (Id. ¶ 67.)

Plaintiff then left Defendant Glinsky's office to retrieve his badge.  (Am. Compl. ¶ 68.)  On his way back, Plaintiff placed a phone call to Defendant Chief Hancock to notify him about a firearm Plaintiff had retrieved from a gutter during his early morning shift.  (Id.)  Plaintiff had followed standard procedure in retrieving the firearm (id. ¶ 76)—he had "been trained to pick up large items out of the road, particularly if they are unsafe or could harm the street sweeper" (id. ¶ 61)—but, even after checking with one of his co-workers earlier in the day (id. ¶ 63), Plaintiff had been unsure what to do with the firearm.  During Plaintiff's call with Chief Hancock, Chief Hancock "instructed Plaintiff to bring the Firearm to his office in the Brooklyn North Headquarters which is located upstairs from the Brooklyn 4 Garage."  (Id. ¶ 69.)  Plaintiff "felt uncomfortable" doing that, however, so he sought the advice of another co-worker "who told him not to touch it and leave it where it [was]."  (Id.)  He therefore left the firearm "on a metal cabinet in the garage" and "notified [a] shop steward [ ] of the firearm's location," before exiting the garage.  (Id. ¶ 70.)  As Plaintiff exited the building, New York City Police Department officers arrested Plaintiff for unlawful possession of a firearm—although, after security camera footage corroborated Plaintiff's account, Plaintiff was released and no charges were filed against him.  (Id. ¶¶ 72-74.)

Alleged Disability Discrimination

In or around October 2017, Plaintiff "suffered a fall" while on duty.  (Am. Compl. ¶ 77.)  The next day, Plaintiff went to the emergency room and was "preliminarily diagnosed with a swollen ankle" and "back and hip pain."  (Id. ¶ 80.)  For an "extended period" of time,

"Plaintiff could not walk," and he was eventually diagnosed with sciatica, which "hindered his ability to perform the major life functions of walking, lifting and sitting[.]"  (Id. ¶ 81.)

Plaintiff requested medical leave and was placed on line of duty injury leave. (Am. Compl. ¶ 82.)  Approximately three months later, Plaintiff "was told by multiple people at the DSNY that his initial leave was exhausted," and he requested "additional leave[.]"  (Id. ¶ 83.) He was directed to the DSNY Clinic, where a physician examined him and cleared him "to return on modified duty."  (Id. ¶ 85.)  Despite "concern that he was not ready to return to work because he continued to suffer severe pain and immobility," Plaintiff returned to work on modified duty in December 2017.  (Id. ¶ 86.)

While on modified duty—which involved "desk work and patrolling the garage" (Am. Compl. ¶ 87)—Plaintiff saw a physician who was not connected to the DSNY, who "told Plaintiff that he should not be working or lifting anything heavier than 25lbs," and that Plaintiff "required additional testing for proper diagnosis."  (Id. ¶ 88.)  A few weeks later, DSNY physicians told Plaintiff that "he had no choice but to return to full duty," despite "Plaintiff saying that he continued to experience pain and required additional testing."  (Id. ¶¶ 89-90.) After "Plaintiff explained that he needed additional time for further testing and recovery," he was told to contact the DSNY Clinic's supervisor, who "told Plaintiff that he ha[d] to return to work or it was a guarantee that he would be fired."  (Id. ¶¶ 91-92.)

Although Plaintiff "was not ready to return to full-duty" due to his "severe pain, immobility," and ongoing testing and treatment including "steroid spinal injections," he "feared that if he refused to return, his employment would be terminated."  (Am. Compl. ¶¶ 93-94.)  He therefore returned to full duty.  (Id.)

Plaintiff reports that two physicians have since told him that his "injury was likely exacerbated by his premature return to full duty work."  (Am. Compl. ¶ 97.)  Since Plaintiff's

termination, he has continued to receive treatment (including spinal surgery in May 2020) for his injuries stemming from his October 2017 fall.  (Id. ¶¶ 95-98.)  Plaintiff "continues to suffer pain, immobility, and walking abnormalities."  (Id. ¶ 99.)

EEOC Charge

Plaintiff filed a charge of discrimination with the Equal Opportunity Employment Commission ("EEOC") on or about July 15, 2019.  (Am. Compl. ¶ 2; EEOC Charge.)  On that Charge, Plaintiff checked a box indicating that he was alleging discrimination based on race—but did not check boxes indicating discrimination based on color or disability—and wrote that he had been discriminated against "based on [his] race" by his "white coworker[s]."  Plaintiff subsequently received a Notice of Right to Sue from the EEOC (Am. Compl. ¶ 2) and filed this action.

## DISCUSSION

To survive a Rule 12(b)(6) motion to dismiss, a complaint must plead "enough facts to state a claim to relief that is plausible on its face."  Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007).  A proper complaint cannot simply recite legal conclusions or bare elements of a cause of action; there must be factual content pleaded that "allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009).  The Court accepts as true the nonconclusory factual allegations in the complaint and draws all reasonable inferences in the nonmoving party's favor.  Roth v. Jennings, 489 F.3d 499, 501 (2d Cir. 2007).

Where, as here, a litigant proceeds pro se, that litigant's submissions "must be construed liberally and interpreted to raise the strongest arguments that they *suggest.*"  Triestman v. Fed. Bureau of Prisons, 470 F.3d 471, 474 (2d Cir. 2006) (citation and internal quotation

marks omitted, emphasis in <u>Triestman</u>).  "This policy of liberally construing <u>pro se</u> submissions is driven by the understanding that '[i]mplicit in the right of self-representation is an obligation on the part of the court to make reasonable allowances to protect <u>pro se</u> litigants from inadvertent forfeiture of important rights because of their lack of legal training.'" <u>Id.</u> (quoting <u>Traguth v. Zuck</u>, 710 F.2d 90, 95 (2d Cir. 1983)).

Defendants raise a number of arguments for why portions of Plaintiff's Amended Complaint should be dismissed.  The Court addresses each argument below.

<u>Defendant the DSNY</u>

Defendants first argue that Plaintiff's claims against Defendant the DSNY should be dismissed, because the DSNY "is not a suable entity," and "all claims against the DSNY must be brought against the City of New York."  (Docket entry no. 32 ("Def. Mem.") at 7 (quoting <u>Phillip v. Dep't of Sanitation</u>, No. 16-CV-2412-MKB, 2019 WL 1004588, at *5 (E.D.N.Y. Feb. 28, 2019)).)  Plaintiff "acknowledges that the DSNY is not a suable entity" (docket entry no. 41 ("Pl. Mem.") at 3[4]), and requests that his claims instead be construed as against Defendant the City of New York.  <u>See</u> <u>Owens v. N.Y.C. Dep't of Sanitation</u>, No. 11-CV-8297-ALC, 2013 WL 150245, at *5 (S.D.N.Y. Jan. 15, 2013) ("As a threshold matter, all claims against defendant DSNY should be amended because it is an agency of the City of New York and is therefore not a legally suable entity.").

The Court grants Defendants' motion to dismiss to the extent it seeks dismissal of Plaintiffs' claims against Defendant DSNY because the DSNY is not a suable entity and the City

---

[4]     Plaintiff's opposition brief was prepared with assistance from the New York Legal Assistance Group's Legal Clinic for <u>Pro Se</u> Litigants.  (Pl. Mem. at 1 n.1.)

of New York is the proper party defendant with respect to Plaintiff's claims asserted against the DSNY.

Title VII and ADA Claims: Timeliness

Defendants seek dismissal of Plaintiff's Title VII and ADA claims to the extent those claims are premised on acts occurring prior to September 18, 2018, which is 300 days before July 15, 2019, the date on which Plaintiff filed his EEOC Charge.

Under Title VII and the ADA, "a claimant may bring suit in federal court only if she has filed a timely complaint with the EEOC and obtained a right-to-sue letter."  Legnani v. Alitalia Linee Aeree Italiane, S.P.A., 274 F.3d 683, 686 (2d Cir. 2001); Purcell v. New York Inst. of Tech. - Coll. of Osteopathic Med., 931 F.3d 59, 63 n.16 (2d Cir. 2019).  Ordinarily, discrimination claims under these statutes must be filed within 180 days of the alleged unlawful employment practice.  See 42 U.S.C. § 2000e-5(e)(1); see also Harris v. City of New York, 186 F.3d 243, 247 (2d Cir. 1999) (noting that section 2000e-5(e)(1)'s time limitations are "incorporated into" the ADA "by reference in 42 U.S.C. § 12117(a)").  However, where the "alleged discrimination took place in a state or locality that has its own antidiscrimination laws and an agency to enforce those laws, then the time period for 'fil[ing]' claims with the EEOC is extended to 300 days."  Ford v. Bernard Fineson Dev. Ctr., 81 F.3d 304, 307 (2d Cir. 1996) (noting that New York has both antidiscrimination laws and an antidiscrimination agency) (citation omitted); 42 U.S.C. §§ 2000e-5(e)(1) & 12117(a).

"[D]iscrete discriminatory acts are not actionable if time barred, even when they are related to acts alleged in timely filed charges.  Each discrete discriminatory act starts a new clock for filing charges alleging that act."  Nat'l R.R. Passenger Corp. v. Morgan, 536 U.S. 101, 113 (2002).  Therefore, to the extent Plaintiff's ADA and Title VII claims are based on

allegations of discrete discriminatory acts that occurred before September 18, 2018, such claims are untimely.[5]

However, Plaintiff also asserts hostile work environment claims, and "[h]ostile environment claims are different in kind from discrete acts," in that "[t]heir very nature involves repeated conduct." Morgan, 536 U.S. at 115. The Court may consider "the entire scope of a hostile work environment claim, including behavior alleged outside the statutory time period, [ ] for the purposes of assessing liability, so long as an act contributing to that hostile environment takes place within the statutory time period." Id. at 105.

In this case, Plaintiff alleges generally that he was subject to racial slurs and other racially offensive comments "until termination." (Am. Compl. ¶ 15.)[6] More specifically, he alleges that on the day of his termination in October 2018, Defendant Glinsky—who only months earlier is alleged to have referred to Plaintiff as "this fucking [N-word]" (id. ¶ 30)— "shout[ed] expletives and slurs" at Plaintiff in the course of terminating his employment. (Id. ¶ 67; accord EEOC Charge.) Construed in the light most favorable to the Plaintiff, these allegations plausibly frame a claim that at least one act contributing to Plaintiff's alleged hostile work environment claims occurred within the statutory period (i.e., on or after September 18, 2018). "Because" Plaintiff has "pleaded a plausible hostile work environment claim, part of which falls within the statutory period, those acts which occurred before" September 18, 2018,

---

[5]     As the parties agree (Pl. Mem. at 3-4; docket entry no. 45 ("Reply") at 4), however, such discrete acts may still be introduced as background evidence in support of a timely claim. See also Morgan, 536 U.S. at 113 ("Nor does the statute bar an employee from using the prior acts as background evidence in support of a timely claim.").

[6]     Defendants do not dispute that Plaintiff's allegations suffice to describe a hostile work environment claim at some point (Reply at 2 n.1); they argue only that Plaintiff "has not alleged" any acts "during the filing period that have contributed to a hostile work environment claim." (Id. at 5-6.)

"may be considered in assessing [Defendants'] potential liability under a hostile work environment theory."  Morales v. City of New York Dep't of Juv. Just., No. 10-CV-829-JGK, 2012 WL 180879, at *6 (S.D.N.Y. Jan. 23, 2012).

The Court therefore grants Defendants' motion to dismiss as untimely Plaintiff's Title VII and ADA claims to the extent those claims are based on acts occurring before September 18, 2018, with the exception of Plaintiff's hostile work environment claim, as to which Defendants' motion is denied.

Title VII and ADA Claims: Exhaustion

Defendants next argue that Plaintiff's ADA and Title VII color discrimination claims should be dismissed as unexhausted.

As set forth above, before seeking redress in federal court for discrimination under Title VII or the ADA, a plaintiff must first address the alleged discrimination in a timely complaint to the EEOC or a state agency with equivalent authority.  See 42 U.S.C. §§ 2000e-5(e)(1) & 12117(a).  However, where a plaintiff's claims in a discrimination suit are "reasonably related" to the allegations raised in his prior EEOC charge such that the "conduct complained of would fall within the scope of the EEOC investigation which can reasonably be expected to grow out of the charge that was made[,]" the administrative exhaustion requirement is met.  Williams v. N.Y.C. Hous. Auth., 458 F.3d 67, 70 (2d Cir. 2006) (citation omitted); Legnani, 274 F.3d at 686 ("claims that were not asserted before the EEOC may be pursued in a subsequent federal court action if they are 'reasonably related' to those that were filed with the agency" (citation omitted)).  To determine whether such "new" claims would have "fall[en] within the scope" of the EEOC's investigation into the claimant's prior claim(s), "the focus should be on the factual allegations made in the [EEOC] charge itself," Deravin v. Kerik, 335 F.3d 195, 201 (2d Cir.

2003) (internal quotation marks and citation omitted), and "whether the complaint filed with the EEOC gave that agency 'adequate notice to investigate discrimination on both bases.'" Williams, 458 F.3d at 70 (citation omitted).

"Plaintiff acknowledges that he failed to exhaust his administrative remedies under the ADA[.]"  (Pl. Mem. at 5.)  Because Plaintiff did not raise the disability discrimination he alleges to have suffered in his EEOC Charge—and because that discrimination could not reasonably have been expected to "fall within the scope of the EEOC investigation" growing "out of the charge [of race discrimination] that was made," Williams, 458 F.3d at 70—Plaintiff's ADA claims are unexhausted and must be dismissed.  See Pinkard v. New York City Dep't of Educ., No. 11-CV-5540-FM, 2012 WL 1592520, at *8 (S.D.N.Y. May 2, 2012) ("Courts have consistently held that discrimination claims based on age, sex, or disability are not reasonably related to claims based on race or color, and vice versa.") (collecting cases).

Having reviewed Plaintiff's EEOC Charge, however, the Court concludes that Plaintiff's color discrimination claims are reasonably related to Plaintiff's race discrimination charge such that they can reasonably have been expected to fall within the EEOC's investigation growing out of the race discrimination charge Plaintiff brought.  That conclusion is consistent with the prevailing view in this District that "[a] color discrimination claim and a race discrimination claim are 'of the same type and character' such that 'the defendant cannot claim to be unfairly surprised by the allegation of [color] discrimination.'"  Clements v. St. Vincent's Hosp. & Med. Ctr. of New York, 919 F. Supp. 161, 164 (S.D.N.Y. 1996) (quoting Avagliano v. Sumitomo Shoji Am., Inc., 614 F. Supp. 1397, 1403 (S.D.N.Y. 1985)); accord Trivedi v. N.Y.S. Unified Ct. Sys. Off. of Ct. Admin., 818 F. Supp. 2d 712, 737 (S.D.N.Y. 2011) ("As a matter of law, a claim of color discrimination may be reasonably related to claims of race and national origin discrimination since the EEOC could be expected to have explored that possibility as part

of its investigation."), aff'd sub nom. Seck v. Off. of Ct. Admin., 582 F. App'x 47 (2d Cir.

2014); Ofudu v. Barr Lab'ys, Inc., 98 F. Supp. 2d 510, 515 (S.D.N.Y. 2000) ("The Court denies

the motion insofar as it seeks to dismiss the claim of color discrimination . . . . It has been

repeatedly held that race and ethnicity discrimination are reasonably related to each other[.]").

 The Court therefore grants Defendants' motion to dismiss Plaintiff's ADA claims

as unexhausted, and denies Defendants' motion insofar as it seeks dismissal of Plaintiff's Title

VII color discrimination claims on exhaustion grounds.

Title VII and ADA Claims: Individual Liability

 Defendants seek dismissal of Plaintiff's Title VII and ADA claims against

Defendants Glinsky and Hancock on the ground that "there is no individual liability under Title

VII and the ADA."  (Def. Mem. at 10.)  Defendants are correct, and Plaintiff concedes that

"there is no individual liability under these federal statutes."  (Pl. Mem. at 6.)  See also Gaughan

v. Rubenstein, 261 F. Supp. 3d 390, 413 (S.D.N.Y. 2017) ("Plaintiff cannot state a claim against

Defendants under either Title VII or the ADA because neither statute provides for individual

liability.").

 The Court therefore grants Defendants' motion to dismiss to the extent it seeks

dismissal of Plaintiff's Title VII and ADA claims against Defendants Glinsky and Hancock.

Section 1981 Claims against the City of New York

 Defendants seek dismissal of Plaintiff's Section 1981 claims against the City of

New York on the ground that Section 1981 "does not provide a separate private right of action

against state actors."  (Def. Mem. at 10-11 (quoting Duplan v. City of New York, 888 F.3d 612,

621 (2d Cir. 2018)).)

Duplan's holding is "binding precedent" in this Circuit.  Smalls v. Collins, 10 F.4th 117, 145 (2d Cir. 2021).  "Claims that a government entity has violated Section 1981" must instead be brought "pursuant to Section 1983, which requires a demonstration that the violation occurred as a result of the government entity's official policy or custom."  Taylor v. City of New York (Dep't of Sanitation), No. 17-CV-1424-LTS-SDA, 2019 WL 3936980, at *4 (S.D.N.Y. Aug. 20, 2019); In re New York City Dep't of Educ., No. 15-CV-7150-AJN, 2019 WL 1433163, at *5 (S.D.N.Y. Mar. 29, 2019) ("Following the Second Circuit's approach in Duplan, the Court will construe the § 1981 claims as causes of action brought under § 1983 and discuss whether the claims can survive pursuant to § 1983 caselaw.").  Construing Plaintiff's Section 1981 claim as brought pursuant to Section 1983, his general allegation on information and belief that the DSNY "has never taken any steps to prevent discriminatory harassment in the Brooklyn 4 garage" (Am. Compl. ¶ 36) is insufficient to plausibly allege that any discriminatory conduct occurred as a result of an official policy or custom of the City of New York.  See Duplan, 888 F.3d at 621 ("Moreover, if we construe Duplan's § 1981 claims as brought under § 1983, they still fail because Duplan has failed to allege that the 'challenged acts were performed pursuant to a municipal policy or custom,' as required to maintain a § 1983 action against a municipality." (quoting Patterson v. Cty. of Oneida, 375 F.3d 206, 226 (2d Cir. 2004)).

In light of Plaintiff's pro se status and the fact that Defendants' motion to dismiss did not place Plaintiff on notice of the need to allege facts plausibly demonstrating that the acts he challenges were performed pursuant to a "government entity's official policy or custom" in support of any Section 1983 claim, the Court will permit Plaintiff leave to further amend his Amended Complaint to the extent he seeks to assert such a claim against the City of New York.

The Court therefore grants Defendants' motion to dismiss Plaintiff's Section 1981 claim against the City of New York.  Plaintiff may, however, file a further amended

pleading alleging additional facts in support of a claim pursuant to Section 1983, to the extent

such a claim would not be futile, by the deadline set forth in the Court's Conclusion below.

Defendant Chief Hancock

Defendant Hancock seeks dismissal of Plaintiff's remaining claims against him—

under Section 1981, the NYSHRL, and the NYCHRL—on the ground that Plaintiff has failed to

allege his involvement in any of the discriminatory acts set forth in the Amended Complaint.

"An individual may be held liable under §§ 1981 and 1983 only if that individual

is 'personally involved in the alleged deprivation.'" Littlejohn v. City of New York, 795 F.3d

297, 314 (2d Cir. 2015) (citations omitted).  "Personal involvement, within the meaning of this

concept, includes not only direct participation in the alleged violation but also gross negligence

in the supervision of subordinates who committed the wrongful acts and failure to take action

upon receiving information that constitutional violations are occurring."  Patterson, 375 F.3d at

229.  "The [NY]SHRL and [NY]CHRL similarly provide for individual liability for persons who

'aid, abet, incite, compel[ ] or coerce the doing of any of the acts forbidden [thereunder], or [ ]

attempt to do so.'"  Hagan v. City of New York, 39 F. Supp. 3d 481, 514 (S.D.N.Y. 2014)

(quoting N.Y. Exec. L. § 296(6) and N.Y.C. Admin. Code § 8-107(6)); accord Lewis v.

Roosevelt Island Operating Corp., 246 F. Supp. 3d 979, 992 (S.D.N.Y. 2017) ("The NYSHRL

and NYCHRL also require personal involvement by the defendant, which includes aiding and

abetting the alleged violation.").

The Amended Complaint fails to allege plausibly that Defendant Hancock was

personally involved in, or aided and abetted, any of the discriminatory acts forming the basis of

Plaintiff's claims.  The only allegations as to Defendant Hancock are that Plaintiff called him,

after the meeting in which Plaintiff's employment was terminated, about the firearm Plaintiff had

retrieved, and that Defendant Hancock "instructed Plaintiff to bring the Firearm to his office[.]" (Am. Compl. ¶ 69.)  This allegation suggests neither that Defendant Hancock was personally involved in any discriminatory acts, nor that he aided or abetted any of those acts.

In his opposition brief, Plaintiff writes that his claims against Defendant Hancock "should not be dismissed" because:

> Plaintiff believes either Hancock and or Glinsky called the police on me due to racially motivated and or discriminatory reasons.[ ]  Hancock also erroneously instructed me to as a civilian, drive the firearm out of the garage to the police precinct, as well as b[r]ing it to his office.  I did neither to ensure I obeyed the law.

(Pl. Mem. at 7.)  The Court construes Plaintiff's opposition as a proffer of facts he would allege if permitted leave to amend as to Defendant Hancock.  Even assuming that Plaintiff were to amend to assert these allegations, however, they would not suffice to plausibly allege Defendant Hancock's personal involvement in any allegedly discriminatory acts.  Initially, Plaintiff's mere "belie[f]" that Defendant Hancock may have "called the police on [him] due to racially motivated and or discriminatory reasons" is insufficient to allege plausibly any personal involvement on the part of Defendant Hancock, given the lack of any other factual allegations plausibly supporting the legal conclusion that Defendant Hancock—even if he did in fact call the police to report Plaintiff's possession of a firearm—acted out of racial animus or discriminatory intent.  See Walker v. NYS Just. Ctr. for Prot. of People with Special Needs, 493 F. Supp. 3d 239, 250 (S.D.N.Y. 2020) ("pure[ ] speculat[ion] . . . cannot form the basis for alleging" a defendant's personal involvement).  Similarly, Plaintiff's proffer of what Defendant Hancock "erroneously" directed him to do with the firearm he retrieved is not suggestive of involvement in unlawful discrimination by Defendant Hancock.  Plaintiff has neither plausibly alleged Defendant Hancock's personal involvement in any discriminatory acts, nor proffered facts suggesting that Plaintiff would be able to do so if permitted leave to amend.

The Court therefore grants Defendants' motion to dismiss Plaintiff's claims against Defendant Hancock.

Plaintiff's Disparate Treatment Claims

Defendants move to dismiss Plaintiff's disparate treatment claims under Title VII, Section 1981, and the NYSHRL on the ground that the Amended Complaint "fails to state a claim for discrimination" in connection with his termination, "the only timely alleged act under . . . Title VII[.]"  (Def. Mem. at 11-14.)

A plaintiff alleging employment discrimination on the basis of race, under any of Title VII, Section 1981, or the NYSHRL, must allege facts at the pleadings stage plausibly supporting at least "a minimal inference of discriminatory motivation."  Littlejohn, 795 F.3d at 311; Raymond v. City of New York, 317 F. Supp. 3d 746, 761 (S.D.N.Y. 2018) ("To withstand 'a motion to dismiss, the plaintiff[s] must specifically allege the events claimed to constitute intentional discrimination as well as circumstances giving rise to a plausible inference of racially discriminatory intent.'" (citation omitted)).  "An inference of discrimination can arise from circumstances including, but not limited to, 'the employer's criticism of the plaintiff's performance in ethnically degrading terms; or its invidious comments about others in the employee's protected group; or the more favorable treatment of employees not in the protected group; or the sequence of events leading to the plaintiff's discharge.'"  Littlejohn, 795 F.3d at 312 (quoting Leibowitz v. Cornell Univ., 584 F.3d 487, 502 (2d Cir. 2009)); see also Mesias v. Cravath, Swaine & Moore LLP, 106 F. Supp. 3d 431, 436 (S.D.N.Y. 2015) ("actions or remarks made by decisionmakers that could be viewed as reflecting a discriminatory animus" may "give rise to an inference of discriminatory motive" (quoting Chertkova v. Conn. Gen. Life Ins. Co., 92 F.3d 81, 91 (2d Cir. 1996)).

Construing the Amended Complaint in the light most favorable to Plaintiff, the Court concludes that Plaintiff has met his "minimal" burden of alleging facts plausibly supporting an inference of discriminatory motivation in connection with his termination. Plaintiff alleges that he was terminated for "no reason" by Defendant Glinsky—who only months earlier had referred to Plaintiff as "this fucking [N-word]"—and that while she was terminating his employment, Defendant Glinksy "shout[ed] expletives and slurs at Plaintiff." (Am. Compl. ¶¶ 30, 54, 67.)[7]  Especially against the backdrop of Plaintiff's other hostile work environment allegations, these allegations amount to more than the type of "stray remark" some courts have found insufficient to plausibly allege a minimal inference of discriminatory motive. (See Def. Mem. at 13.)  See also Abdu-Brisson v. Delta Air Lines, Inc., 239 F.3d 456, 468 (2d Cir. 2001) ("While it is true that the stray remarks of a decision-maker, without more, cannot prove a claim of employment discrimination . . . we have held that when 'other indicia of discrimination are properly presented, the remarks can no longer be deemed "stray," and the jury has a right to conclude that they bear a more ominous significance.'" (citations omitted)).[8]

---

[7]  Defendants argue that "Plaintiff has not plead [sic] . . . that Glinsky was a decision-maker with respect to his termination—merely that she was one of the two people who communicated his termination to him."  (Def. Mem. at 13.)  Plaintiff alleges that Defendant Glinsky was "the Superintendent" at the DSNY garage where he worked (Am. Compl. ¶ 7); that Defendant Glinsky's office was the office he went to in order to drop off a request for authorized leave (id. ¶ 29); that Defendant Glinsky was the individual who answered his question about why he was being terminated (id. ¶ 54); and that Defendant Glinsky was the individual who reprimanded him for failing to have his badge on him at that time.  (Id. ¶ 67.)  Moreover, Plaintiff wrote in his EEOC Charge that "Erica Glinsky terminated me for no reason."  (EEOC Charge.)  Construed in the light most favorable to Plaintiff, Plaintiff has plausibly alleged that Defendant Glinsky was a decision-maker with respect to his termination.

[8]  Defendants also argue that "[a]dditionally, Plaintiff does not attempt to raise an inference of discrimination through the use of comparators or similarly situated individuals," in that he "makes no attempt to identify any comparators by name, job position, or otherwise[.]" (Def. Mem. at 14.)  Given that Plaintiff has alleged facts giving rise to a plausible inference of discrimination, the Court need not decide whether Plaintiff's allegations

The Court therefore denies Defendants' motion to dismiss to the extent it argues that the Amended Complaint "fails to state a claim of discrimination."  (Def. Mem. at 11.)

Plaintiff's Failure to Accommodate Claims

Defendants also move to dismiss Plaintiff's failure to accommodate claims for failure to state a claim.

"To establish a prima facie failure to accommodate claim under the NYCHRL and NYCHRL,"[9] a plaintiff must allege that: "'(1) plaintiff is a person with a disability under the meaning of [the relevant statute]; (2) an employer covered by the statute had notice of his disability; (3) with reasonable accommodation, plaintiff could perform the essential functions of the job at issue; and (4) the employer has refused to make such accommodations.'"  Gaughan v. Rubenstein, 261 F. Supp. 3d 390, 419 (quoting Nieblas–Love v. N.Y.C. Hous. Auth., 165 F. Supp. 3d 51, 73 (S.D.N.Y. 2016)).

Defendants argue that Plaintiff has failed to plausibly allege the third element of his failure to accommodate claim, in that: "Plaintiff seems to state that the accommodation he requested was open-ended leave . . . [s]uch a request, however, is unreasonable under the [NY]SHRL as it does not allow Plaintiff to perform the essential functions of his job[.]"  (Def. Mem. at 14-15); see also Vangas v. Montefiore Med. Ctr., 823 F.3d 174, 181 (2d Cir. 2016) ("an indefinite leave extension . . . as a matter of law is not a reasonable accommodation").  However,

---

about his allegedly comparable co-workers—including that "[o]ther sanitation workers from Brooklyn 4 garage that had less seniority than Plaintiff but who had not received [the] undesirable assignments [he received] included Mr. Caka, Mr. Vega, and Mr. Luccarrelli, who are all White" (Am. Compl. ¶ 52)—independently give rise to such an inference.  See Littlejohn, 795 F.3d at 312 ("[a]n inference of discrimination can arise from circumstances including, but not limited to . . . the more favorable treatment of employees not in the protected group" (internal citations and quotation marks omitted)).

[9]     As set forth above, Plaintiff's ADA claims are unexhausted and untimely.

the Amended Complaint alleges not only that Plaintiff was "not ready to return to work" in

December 2017, due to his "severe pain and immobility," but also that he was forced to

transition from modified to full duty work one to two months later, despite "Plaintiff explain[ing]

that he needed additional time for further testing and recovery."  (Am. Compl. ¶¶ 86-92; id. ¶ 93

("Plaintiff was not ready to return to full-duty because he continued to be disabled by sciatica in

that he suffered from severe pain, immobility, and was undergoing serious treatment like steroid

spinal injections."); id. ¶ 97 (alleging that Plaintiff's "injury was likely exacerbated by his

premature return to full duty work[ ]").)  Liberally construed, the Amended Complaint plausibly

alleges that Plaintiff sought continued modified duty as a "reasonable accommodation," and that

Defendants failed to make that accommodation.[10]

The Court therefore denies Defendants' motion to dismiss to the extent it seeks

dismissal of Plaintiff's failure to accommodate claims on the ground that Plaintiff requested only

the unreasonable accommodation of indefinite leave.

Newly-Asserted Rehabilitation Act Claims

In Plaintiff's opposition memorandum, Plaintiff seeks to assert, for the first time,

disability discrimination claims under the Rehabilitation Act, 29 U.S.C. § 701 et seq.

"Like the ADA, the Rehabilitation Act 'prohibits disability-based discrimination,'

but it applies specifically to 'government agencies and other recipients of federal funds.'"  Castro

v. City of New York, 24 F. Supp. 3d 250, 260 (E.D.N.Y. 2014) (quoting Lyons v. Legal Aid

Society, 68 F.3d 1512, 1514-15 (2d Cir.1995)).  "'Reasonable accommodation' is 'interpreted in

the same way with respect to both the ADA and the Rehabilitation Act.'"  Id. (quoting Lyons, 68

---

[10]     Defendants do not argue that Plaintiff's request for continued modified duty was an
         unreasonable accommodation as a matter of law.  (Reply at 8-9.)

F. 3d at 1515).  Unlike the ADA, however, the Rehabilitation Act does not require a plaintiff to exhaust administrative remedies before bringing an action against an employer who is a recipient of federal funding, Dickson v. New York State Off. of Child. & Fam. Servs., 453 F. Supp. 3d 587, 592 (E.D.N.Y. 2020), and provides for a comparatively liberal three-year statute of limitations.  Id.; Harris, 186 F.3d at 247.  For those reasons, Plaintiff "argues that his discrimination claims . . . should [ ] be considered under the Rehabilitation Act."  (Pl. Mem. at 5.)

The Court construes Plaintiff's references to the Rehabilitation Act as a request for leave to further amend the Amended Complaint to allege a Rehabilitation Act claim against the City of New York.[11]  So construed, Plaintiff's request is granted.

Federal Rule of Civil Procedure 15(a)(2) directs this Court to grant leave to amend "freely" when justice so requires.  See Loreley Fin. (Jersey) No. 3 Ltd. v. Wells Fargo Sec., LLC, 797 F.3d 160, 190 (2d Cir. 2015) (hewing to the "liberal standard set forth in Rule 15").  This is "particularly true" as to pro se parties, B. Braxton/Obed-Edom v. City of New York, 368 F. Supp. 3d 729, 740 (S.D.N.Y. 2019), and where the party seeking leave to amend has not yet had the "benefit of a ruling" as to the "precise defects" in a party's claims.  Loreley, 797 F.3d at 190-91; Babyrev v. Lanotte, No. 16-CV-5421-ER, 2018 WL 388850, at *8 (S.D.N.Y. Jan. 11, 2018) ("[W]hile the Court has already granted Plaintiff the opportunity to amend his original Complaint, it was not in the context of a motion to dismiss and the Court has therefore not provided guidance as to how his claims may be adequately made.").

---

[11]     "There is no individual liability under the . . . Rehabilitation Act."  J.L. on behalf of J.P. v. New York City Dep't of Educ., 324 F. Supp. 3d 455, 467 (S.D.N.Y. 2018).

In this case, Defendants argue that Plaintiff should not be permitted to "offhandedly change his claims to suit his needs after Defendants point out deficiencies with his claims" (Reply at 9), but advance no other argument (such as undue delay, bad faith, undue prejudice, or futility) for why Plaintiff should not be allowed leave to amend to assert a claim under the Rehabilitation Act.[12]  Given this Circuit's preference for deciding claims on the merits, Loreley, 797 F.3d at 191, and Plaintiff's pro se status, the Court grants Plaintiff leave to file a Second Amended Complaint asserting claims under the Rehabilitation Act.  See Darcy v. Lippman, No. 03-CV-6898-KMW-DCF, 2006 WL 3761982, at *4 (S.D.N.Y. Dec. 19, 2006) (dismissing a plaintiff's ADA claims but granting the plaintiff "leave to amend his Complaint to set forth a claim under the Rehabilitation Act" in light of the plaintiff's pro se status).

CONCLUSION

For the reasons discussed above, Defendants' motion to dismiss (docket entry no. 31) is granted in part and denied in part.  The motion is granted to the extent it seeks dismissal of (1) all of Plaintiffs' claims against Defendants Hancock and the New York City Department of Sanitation, (2) all of Plaintiff's Title VII and ADA claims—except Plaintiff's hostile work environment claims—to the extent those claims are based on discrete acts occurring before September 18, 2018, (3) Plaintiff's Title VII and ADA claims against Defendant Glinsky, and (4) Plaintiff's Section 1981 claim against the City of New York.  It is denied in all other respects.

If Plaintiff wishes to file a Second Amended Complaint asserting new claims against Defendant the City of New York under 42 U.S.C. section 1983 and/or the Rehabilitation Act, he must file that Second Amended Complaint by **November 1, 2021**.  Plaintiff is warned

---

[12]   Though this action has been pending since October 2019, some of that delay has resulted from Plaintiff's May 2020 surgery, and discovery has been stayed during the pendency of Defendants' motion to dismiss.  (See docket entry nos. 17, 37.)

that the Second Amended Complaint will completely replace, not supplement, any prior

complaint, and it must therefore include all relevant factual allegations (including those

previously asserted in the First Amended Complaint) against each remaining defendant.

       This case remains referred to Magistrate Judge Lehrburger for general pretrial

management.

       This Memorandum Order resolves docket entry no. 31.  The Clerk of Court is

respectfully directed to terminate Defendants Chief Hancock and the New York City Department

of Sanitation on the docket of this action.


      SO ORDERED.

Dated: September 27, 2021
      New York, New York


                /s/ Laura Taylor Swain
               LAURA TAYLOR SWAIN
               Chief United States District Judge