UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

CARROLL O'QUINN,

                Plaintiff,

v.

CITY OF NEW YORK,

                Defendant.

1:19-CV-09663-LTS-RWL

MEMORANDUM ORDER

Before the Court is the motion of Plaintiff Carroll O'Quinn ("Plaintiff" or "O'Quinn") to enforce a settlement agreement entered into by and between Plaintiff and Defendant City of New York ("Defendant" or "City"). (Docket entry no. 116). Plaintiff's motion seeks an order directing Defendant to pay Plaintiff $21,042.59, which is purportedly the portion of the agreed settlement amount that is outstanding. (Id. at 4.) The Court has carefully considered the parties' submissions—(docket entry no. 116 ("Pl. Mem."); docket entry no. 118 ("Def. Mem."); docket entry no. 119 ("Pl. Reply"); docket entry no. 121 ("Def. Sur-Reply."); docket entry no. 122 ("Pl. Sur-sur Reply")[1]—and, for the following reasons, the Court denies Plaintiff's motion.

BACKGROUND

The Court assumes familiarity with the underlying facts of this case, as summarized in the Court's September 27, 2021 Memorandum Order. (Docket entry no. 50); see also O'Quinn v. City of New York, No. 19-CV-9663-LTS-RWL, 2021 WL 4429787 (S.D.N.Y.

---

[1]     Docket entry pincites are to ECF-designated pages.

Sept. 27, 2021). The following background sets forth only the facts necessary to resolve the instant motion before the Court.

On December 1, 2023, Plaintiff and Defendant agreed to settle the underlying action and executed a settlement agreement.[2] (Docket entry no. 110 at 4-8 ("Settlement Agreement").) The Settlement Agreement provides in relevant part that:

> On behalf of the defendant, the City of New York ("City") agrees to pay Plaintiff the gross total sum of Sixty One Thousand Dollars and Zero Cents ($61,000.00) (the "Settlement Amount") addressing the compensatory damages Plaintiff alleges is for physical pain and suffering. The Settlement Amount fully satisfies the claims that were or could have been alleged in this Action arising out of the events alleged in the complaint in said Action. The Settlement Amount reflects the entire amount of the settlement, including, but not limited to, any alleged damages, costs, fees, or attorneys' fees, and Plaintiff waives any and all rights to any additional amounts from the defendants for claims that were or could have been alleged in this Action arising out of the events alleged in the complaint in said Action. The parties agree that any and all tax liabilities for the Settlement Amount will be the sole responsibility of Plaintiff.

(Id. ¶ 2.)

The Settlement Agreement further provides that "Payment of the Settlement Amount shall be made in one check, payable to 'Carroll O'Quinn.'" (Id. ¶ 3.)

On January 12, 2024, the Court entered an Amended Order of Dismissal, which provides that "[t]he Court expressly retains jurisdiction over enforcement of the parties' settlement agreement." (Docket entry no. 110 ("Am. Order of Dismissal") at 2.) The Amended Order of Dismissal also attached the Settlement Agreement as an exhibit. (Id. at 4-8.)

---

[2]  Plaintiff initially brought this action against the City, two City employees, and the New York City Department of Sanitation. (Docket entry no. 19 (Amended Complaint).) All defendants except the City were subsequently dismissed and are not parties to the Settlement Agreement. (Docket entry nos. 50, 104, 110 at 4.)

In February 2024, the City sent Plaintiff a check for $39,957.41. (See docket entry no. 114 at 1-2.) The City "state[d] that this amount constitutes the $61,000 settlement amount minus the $21,042.59 that Plaintiff owed to the City in unpaid parking or camera violation summonses that were in judgment, as well as the interest on those judgments." (Id. at 1.) Plaintiff had received 151 parking and camera summonses but had failed to appear or pay, and the Parking Violations Bureau had entered default judgments on these summonses. (Docket entry no. 118 at 9-11.)

Plaintiff objected to the City's setoff and brought this motion seeking $21,042.59, which is the amount the City withheld. (Docket entry no. 116.)

DISCUSSION

An action to enforce a settlement agreement is "in essence, [a] breach of contract action[] governed by state law." Gomez v. Terri Vegetarian LLC, No. 17-CV-00213-JLC, 2021 WL 2349509, at *3 (S.D.N.Y. June 9, 2021) (citation omitted).[3] A breach of contract claim under New York law has four elements: "'(1) the existence of an agreement, (2) adequate performance of the contract by the plaintiff, (3) breach of contract by the defendant, and (4) damages.'" Salto v. Alberto's Constr., LLC, No. 17-CV-03583-PED, 2020 WL 4383674, at *6 (S.D.N.Y. July 31, 2020) (quoting Planete Bleue Television, Inc. v. A&E Television Networks, LLC, No. 16-CV-09317-PGG, 2018 WL 10579873, at *7 (S.D.N.Y. Sept. 19, 2018)).

---

[3] As a threshold issue, this Court has ancillary jurisdiction over Plaintiff's motion because the Court expressly retained jurisdiction over the settlement agreement in its Amended Order of Dismissal. (Am. Order of Dismissal at 2); see Romero v. New Blue Flowers Gourmet Corp., No. 16-CV-08753-DF, 2021 WL 860986, at *3 (S.D.N.Y. Mar. 8, 2021).

Plaintiff argues that Defendant breached the Settlement Agreement by failing to pay the "gross total sum of Sixty One Thousand Dollars and Zero Cents." In opposition, Defendant contends that it was entitled to deduct the unpaid parking and camera violation judgments under the common law and statutory doctrines of setoff.

Defendant's argument prevails. Defendant has shown that it has met the requirements for setoff. Furthermore, Defendant's right of setoff is not barred by either the Settlement Agreement or equity, as Plaintiff argues.

Defendant's Right of Setoff

The right of setoff "belongs to every creditor, to apply the unappropriated moneys of his debtor, in his hands, in extinguishment of the debts due to him." U.S. v. Munsey Tr., 332 U.S. 234, 239 (1947) (quoting Gratiot v. United States, 40 U.S. 336, 370 (1841)). The doctrine "allows entities that owe each other money to apply their mutual debts against each other, thereby avoiding the absurdity of making A pay B when B owes A." Emerson Elec. Co. v. Asset Mgmt. Assocs. of New York, Inc., No. 16-CV-01390-PKC-SIL, 2023 WL 4850528, at *6 (E.D.N.Y. July 28, 2023) (quoting DeFlora Lake Dev. Assocs., Inc. v. Hyde Park, 689 F. App'x 99, 100 (2d Cir. 2017)).

In New York, setoff exists as a common law right, as well as a statutory right under New York Debtor & Creditor Law ("DCL") section 151. In re Bennett Funding Grp., Inc., 146 F.3d 136, 139 (2d Cir. 1998). Under New York law, the right of setoff is "jealously protected" and enjoys a "cherished status." U.S. v. BCCI Holdings (Luxembourg), S.A., 941 F. Supp. 180, 187 (D.D.C. 1996) (citing Indus. Comm'r of the State of New York v. Five Corners Tavern, 47 N.Y.2d 639, 646 (1979); Aspen Indus., Inc. v. Marine Midland Bank, 439 N.Y.S.2d 316, 320 (1981)). This right also accrues to municipal creditors like the City. Town of N.

Hempstead v. Cnty. of Nassau, 24 N.Y.3d 67, 77 (2014).  Defendant has established that it is entitled to setoff under both the common law and DCL section 151.

To invoke the common law right of setoff, Defendant must establish mutuality of the parties and the claims.  "[D]ebts may arise from different transactions, but they must be mutual."  Westinghouse Credit Corp. v. D'Urso, 278 F.3d 138, 149 (2d Cir. 2002) (applying New York law) (citations omitted).  "[D]ebts are mutual when they are due to and from the same persons in the same capacity."  Id. (citations omitted).  This is satisfied here.  The City was ultimately responsible for the obligation under the Settlement Agreement and was ultimately due payment for the parking and camera violation judgments.  Mutuality is not destroyed because different instrumentalities of the City disbursed payment under the Settlement Agreement and adjudged the parking ticket violations.  See Suburban Restoration Co. v. Off. of State Comptroller, 953 N.Y.S.2d 319, 321 (App. Div., 3d Dep't 2012) (Under the doctrine of setoff, "if a claimant is owed money by a state agency but also owes money to the same or another state agency, respondent may subtract and withhold the money owed to the state from the money owed by the state, thereby facilitating the collection by the state of money it is due."); accord In re Whimsy, Inc., 221 B.R. 69, 72 (S.D.N.Y. 1998) ("[I]it has long been established that the departments, agencies and subdivisions of the United States Government constitute a single creditor for purposes of setoff." (citing Cherry Cotton Mills v. United States, 327 U.S. 536, 537 (1946)).[4]

---

[4]   In federal bankruptcy proceedings, courts apply state law to determine the scope of setoff.  11 U.S.C.A. § 553 (providing for setoff) (Westlaw through Pub. L. 119-4); In re Delta Air Lines, 341 B.R. 439, 443 (Bankr. S.D.N.Y. 2006) ("Section 553 does not create a federal right of setoff, nor does it enhance, diminish or otherwise modify any state law right of setoff." (citing cases)).

Defendant also has a right to setoff under DCL section 151. That statute provides:

> Every debtor shall have the right upon: [several enumerated triggering events, including] . . .
>
> (e) the issuance of a subpoena or order, in supplementary proceedings, against or with respect to any of the property of a creditor; . . .
>
> to set off and apply against any indebtedness, whether matured or unmatured, of such creditor to such debtor, any amount owing from such debtor to such creditor, at or at any time after, the happening of any of the above mentioned events . . . .

N.Y. DEBTOR & CREDITOR LAW § 151 (Westlaw through 2025 N.Y. Sess. Laws Ch. 1-49, 61-107).

As a preliminary matter, "DCL 151 has generally been applied where a bank which holds funds of a debtor (to whom it is thus itself a debtor) has been served with an enforcement device by a third party creditor to its depositor but such debtor bank is also a creditor of its depositor by virtue of a loan made to that depositor." Pisane v. Feig, 970 N.Y.S.2d 363, 367 (N.Y. Sup. Ct., Kings Cnty. 2013) (citing cases); Peter M. Mortimer, The Law of Set-off in New York, 2 INT'L FIN. REV. 24, 24-33 (May 1983) (collecting cases with this fact pattern and noting "read 'bank' for 'debtor' and 'depositor' for 'creditor'" in DCL section 151). "In recommending an amendment to DCL 151 regarding the right of set off against unmatured debts, the 1952 Report of the New York Law Revision Commission specifically noted that the amendment was intended to protect the garnishee creditor (usually a bank) against the claims of a third party levying judgment creditor. The situation at bar, in which only two parties are reciprocal debtors and creditors, was not specifically addressed." Pisane, 970 N.Y.S.2d at 367 n.5 (citing 1952 Report of the N.Y. Law Review Commission, Leg. Doc. No. 65[L], at 365,

369-70; Indus. Comm'r, 47 N.Y.2d at 646); see also Indus. Comm'r, 47 N.Y.2d at 646 ("[T]he legislative history . . . indicates an intention on the part of the Legislature to preserve the set-off defense for use by a garnishee-creditor [the bank] against a levying judgment creditor [of the depositor] any time after issuance of execution."). Indeed, the statute naturally reads onto the garnishee bank and depositor fact pattern: the bank is the "debtor," the depositor is the "creditor," and the enumerated triggering provisions of DCL section 151 were intended to "'cover the field' in terms of the garnishee's [bank's] right of setoff vis-à-vis the various enforcement devices" that a third party creditor of the depositor could use to go after the depositor's bank account. Aspen, 52 N.Y.2d at 582 ("Marine [the bank] is a 'debtor' of Whiting [depositor] for purposes of section 151 of the Debtor and Creditor Law, for it is clear that a bank is a debtor of its depositor.").

Nonetheless, "the language of the statute [DCL section 151] is not so limited . . . [and may apply where, as here,] no third party is involved, both parties are both debtor and creditor to each other, and the parties are attempting to set off a fully matured debt reflected in a judgment against an unmatured debt." Pisane, 970 N.Y.S.2d at 367 (applying DCL section 151 to set off an arbitration award with payments due under a promissory note); Thai Lao Lignite (Thailand) Co. v. Gov't of the Lao People's Democratic Republic, No. 10-CV-05256-KMW-DCF, 2016 WL 958640, at *2-4 (S.D.N.Y. Mar. 8, 2016) (applying DCL section 151 to set off a discovery sanction award with final judgments awarded by courts in France and Malaysia even where those judgments were not presently enforceable in the United States). Under DCL section 151, the City assumes the role of the "debtor" to Plaintiff, the "creditor," for the obligations due under the Settlement Agreement. The triggering event—"the issuance of a subpoena or order, in supplementary proceedings, against or with respect to any of the property

of a creditor"—is satisfied by the Parking Violation Bureau's judgments against the Plaintiff. See N.Y.C. ADMIN. CODE § 19-203(e) ("The parking violations bureau shall have the following functions, powers and duties . . . [t]o enter judgments and enforce them, without court proceedings, in the same manner as the enforcement of money judgments in civil actions[.]"); Order, BLACK'S LAW DICTIONARY (12th ed. 2024) (defining "order" as "[a] written direction or command delivered by a government official, esp. a court or judge").

Whether the Settlement Agreement Bars Defendant's Right of Setoff

Next, the Court turns to the effect of the Settlement Agreement on Defendant's right of setoff.  Plaintiff argues that the Settlement Agreement required Defendant to pay Plaintiff the "gross total sum of Sixty One Thousand Dollars and Zero Cents," and thereby prohibited Defendant from invoking setoff.  Plaintiff is mistaken.

As a threshold issue, the Settlement Agreement need not expressly provide for a right of setoff.  See Applied Cos. v. United States, 144 F.3d 1470, 1475 (Fed. Cir. 1998) ("[A]n agreement to 'pay' a certain amount does not bar the government from exercising its common law right of setoff against the agreed-to obligation."); Fin. One Pub. Co. v. Lehman Bros. Special Fin., Inc., No. 00-CV-06739-CBM, 2001 WL 1543820, at *2 (S.D.N.Y. Dec. 4, 2001) ("Even if the ISDA Master Agreement itself creates no setoff right, however, defendant still may enjoy a setoff right by operation of law—perhaps under statutory law [(citing DCL section 151)], perhaps under common law equitable principles, or perhaps based on some other source of law."); Fin. One Pub. Co. v. Lehman Bros. Special Fin., 215 F. Supp. 2d 395, 401 (S.D.N.Y. 2002) (holding that while an agreement did not provide for a contractual right of setoff, the agreement did not preclude "[party] from asserting any set-off to which it might be entitled by operation of law"), aff'd, 414 F.3d 325 (2d Cir. 2005).  Rather, setoff, as it exists under New

York common law or statutory law, operates as a background principle, and a contract must expressly opt out of setoff to preclude invocation of the device.  Updike v. Oakland Motor Car Co., 53 F.2d 369, 373 (2d Cir. 1931) ("[A]n agreement must be clear and specific to deprive a party of the ordinary right of set-off."); see also Voest-Alpine Int'l Corp. v. Chase Manhattan Bank, N.A., 707 F.2d 680, 685 (2d Cir. 1983) ("To establish waiver under New York law, one must show that the party charged with waiver relinquished a right with both knowledge of the existence of the right and an intention to relinquish it." (citing City of New York v. State of New York, 40 N.Y.2d 659, 669 (1976))).  The phrase "gross total sum of Sixty One Thousand Dollars and Zero Cents" does not "clear[ly]" and "specific[ally]" deprive Defendant of its setoff right.  See Updike, 53 F.2d at 373.

Furthermore, nowhere else in the Settlement Agreement does Defendant clearly and specifically waive its right to setoff.  While the Plaintiff agreed to waive certain rights and claims under the Settlement Agreement, Defendant did not agree to do the same.  The Settlement Agreement sets out the following waivers on the part of the Plaintiff:

- "On behalf of the defendant, the City of New York ('City') agrees to pay Plaintiff the gross total sum of Sixty One Thousand Dollars and Zero Cents ($61,000.00) (the 'Settlement Amount') addressing the compensatory damages Plaintiff alleges is for physical pain and suffering.  The Settlement Amount fully satisfies the claims that were or could have been alleged in this Action arising out of the events alleged in the complaint in said Action.  The Settlement Amount reflects the entire amount of the settlement, including, but not limited to, any alleged damages, costs, fees, or attorneys' fee, and Plaintiff waives any and all rights to any additional amounts from the defendants for claims that were or could have been alleged in this Action arising out of the events alleged in the complaint in said Action." (Settlement Agreement ¶ 2.)

- "In consideration for the Settlement Amount, Plaintiff agrees to the discontinuance and dismissal with prejudice of any and all rights of action or claims he had alleged against defendant in the above-captioned Action and to release and discharge [defendants, the 'Released Parties'] from all claims, liabilities and/or causes of action which Plaintiff has or may have against any of the Released Parties based upon anything arising out of the events alleged in the complaint in this Action, up to now and including the date of the

- execution of this Settlement Agreement, whether known or unknown, and whether or not discoverable, based on any and all liability, claims, or rights of action which were or could have been alleged in this Action, including all claims for costs, expenses and attorneys' fees." (Id. ¶ 4.)

- "The Settlement Amount reflects the entire amount Plaintiff shall be entitled to from defendant and/or the City; and Plaintiff waives any and all rights to any additional amounts from any of the Released Parties, for claims that were or could have been alleged in this Action arising out of the events alleged in the complaint in said Action." (Id. ¶ 5.)

- Under the General Release and Waiver accompanying the Settlement Agreement,[5] Plaintiff agreed to "release defendant City of New York as well as all prior named defendants, and their successors, or assigns, and all past and present officials, employees, representatives, trustees, and agents of the City of New York and/or the New York City Department of Sanitation, any or all of them, their successors or assigns (collectively, the 'Released Parties') from any and all liability, claims, demands, causes of action, obligations, damages, and grievances whatsoever of every kind and nature, at law or in equity, whether joint or several, whether known or unknown, and whether or not discoverable, which were or could have been asserted by me against any of the Released Parties resulting from anything which has happened from the beginning of the world up to and including the date of the execution of this release arising out of the events alleged in the complaint in this action, based on any and all liability, claims, or rights of action which were or could have been alleged in this Action including, but not limited to, all claims for costs, expenses, and attorneys' fees." (Docket entry no. 107-1 at 2.)

Unlike Plaintiff, Defendant did not agree to waive any rights or claims against Plaintiff. Cf. Grant Cnty. Sav. & Loan Ass'n, Sheridan, Arkansas v. Resol. Tr. Corp., 968 F.2d 722, 725 (8th Cir. 1992) (finding that Grant County "waived its right to setoff" where it "plainly agreed to release the RTC 'from any and all claims, demands, liabilities, controversies or causes of action, . . . in law or in equity, which Grant County has or may have' and agreed the settlement and release were 'in compromise and settlement of all claims of every kind' against the RTC" (quoting contractual language)).

---

[5] Plaintiff executed the General Release and Waiver as part of the Settlement Agreement. (Settlement Agreement ¶ 10; see also docket entry no. 107-1 (General Release and Waiver).)

Accordingly, the Settlement Agreement does not preclude Defendant from exercising its right of setoff.

Whether Equitable Discretion Should be Invoked to Bar Defendant's Right to Setoff

Finally, the Court considers whether it should exercise equitable discretion to deny setoff.[6]  See Beecher v. Peter A. Vogt Mfg. Co., 227 N.Y. 468, 473 (1921) ("Relief in equity by setting off one judgment against another is granted, not of right, but in the exercise of discretion."); Bohack Corp. v. Borden, Inc., 599 F.2d 1160, 1165 (2d Cir. 1979) ("Allowance or disallowance of a setoff is a decision which ultimately rests in the sound discretion of the [] court.").  Plaintiff raises several arguments, but none are persuasive.  Equity does not favor Plaintiff, and, consequently, does not counsel against setoff.

First, Plaintiff avers that "setoff would be an unfair surprise" because Plaintiff "had no reason whatsoever to expect that old parking tickets had anything to do with his claims in this case" and that Defendant "had multiple junctures to raise those tickets explicitly so that there could be mutual understanding that those tickets would factor into the compensation that Mr. O'Quinn would receive for his claims.  But the City failed to do so." (Docket entry no. 119 at 4.)  According to Plaintiff, at no time during the settlement discussions did Defendant indicate that it would exercise setoff, and Defendant declared "for the very first time" that it intended to

---

[6]   The arguments raised by Plaintiff can also be considered under the doctrine of equitable estoppel.  See Nassau Tr. Co. v. Montrose Concrete Prod. Corp., 56 N.Y.2d 175, 184 (1982) (Equitable estoppel is enforced "by law in the interest of fairness to prevent the enforcement of rights which would work fraud or injustice upon the person against whom enforcement is sought and who, in justifiable reliance upon the opposing party's words or conduct, has been misled into acting upon the belief that such enforcement would not be sought.").

exercise setoff on December 22, 2023, weeks after the Settlement Agreement was executed. (Docket entry no. 116 at 3; docket entry no. 122 at 4.)

Defendant's argument is unavailing because Plaintiff shares some fault. As part of the Settlement Agreement, Plaintiff submitted an Affidavit Concerning Liens, in which Plaintiff attested "[t]o the best of my knowledge, the City of New York has no outstanding liens against me or my property for obligations owed for Parking Violations." (Docket entry no. 107-2 ¶ 3.) Setting aside the issue of whether the unpaid parking and camera violation judgments were "liens," Plaintiff is not blameless for failing to raise the issue during settlement discussions, especially when he was in the best position to know what debts he owed the City. Likewise, Plaintiff is not blameless for accruing such a substantial sum of unpaid default judgments in the first place. Plaintiff repeatedly and blatantly failed to appear and pay his summonses. Furthermore, from December 20, 2023—when Defendant's setoff was calculated—to May 1, 2024, Plaintiff accrued eleven additional unpaid parking and camera violation judgments. (Docket entry no. 118 at 11.)

Second, Plaintiff contends that the City "could not unilaterally" apply setoff. (Docket entry no. 116 at 3.) To illustrate this concept, Plaintiff presents two hypotheticals in which he contends setoff would not apply: "An official in the Office of the Comptroller could not unilaterally intercept a wire transfer to someone who has parking violations, deduct the amount of those violations, and only let the remainder reach its intended recipient," and an official "could not unilaterally walk into a bank and demand that the account of someone who committed parking violations be reduced in the amount of those violations." (Id.) Plaintiff's argument lacks merit. As a threshold matter, setoff would not apply in Plaintiff's hypotheticals because mutuality is lacking. As discussed above, what Plaintiff terms "unilateral" setoff is

permitted in situations such as the one presented here only when there is mutuality.  In <u>Suburban Restoration Co. v. Office of State Comptroller</u>, 953 N.Y.S.2d 319 (App. Div., 3d Dep't 2012), the State Insurance Fund obtained a $130,117.76 default judgment against a company in 1994.  More than a decade later, in 2010, the State Insurance Fund exercised setoff by withholding $294,065.76 (the original default judgment plus interest) worth of payments due to the company under contracts that the company had with other State agencies.  <u>Id.</u> at 321.  When the company filed an action to annul the State's withholding, the court ruled in favor of the State, holding that the State "has a common-law right to offset any valid claim or debt owed to the state against a claimant who is due money under respondent's control, even if the setoff is unrelated to the state's debt to that claimant."  <u>Id.</u>

Third, Plaintiff objects that setoff "den[ies] Mr. O'Quinn the benefit of the procedures to which other alleged parking violators are entitled."  (Docket entry no. 116 at 3.)  Plaintiff, however, fails to elaborate further or explain what these "procedures" are.  Nor could Plaintiff do so because he already had an opportunity to pursue "procedures" available to alleged parking violators.  The City established that the Parking Violations Bureau entered default judgment against Plaintiff on each of the 151 summonses because Plaintiff failed to appear or pay.  (Docket entry no. 118 at 9-11.)  Furthermore, the Second Circuit has repeatedly upheld the Parking Violation Bureau's practice of entering and enforcing judgments and has found that the procedures available to violators to challenge summonses not only meet but exceed constitutional due process requirements.  <u>See, e.g.</u>, <u>Yu Juan Sheng v. City of New York</u>, No. 05-CV-01118-RRM-VVP, 2009 WL 6871132, at *9-12 (E.D.N.Y. June 26, 2009), <u>report and</u>

recommendation adopted, 2010 WL 3744428 (E.D.N.Y. Sept. 20, 2010); Torres v. City of New York, 590 F. Supp. 3d 610, 617-18 (S.D.N.Y. 2022) (collecting cases).

Accordingly, equity does not preclude Defendant's right to setoff.[7]

## Conclusion

For the foregoing reasons, Plaintiff's motion to enforce the settlement agreement is denied. (Docket entry no. 116.) Defendant's motion for leave to file sur-reply, or disregard

---

[7] Plaintiff's argument that Lopez v. New York, 578 N.Y.S.2d 1013 (Sup. Ct., Bronx Cnty. 1991), counsels against application of setoff is also unavailing. There, after the City issued a settlement check, the City issued an execution for judgments entered by the Parking Violations Bureau for unpaid summonses accrued by the plaintiff. Id. at 1014-15. The City argued that it was entitled to set off the settlement check with the Parking Violations Bureau judgments and that it was entitled to stop payment on the check. Id. at 1015-16. The court rejected the City's arguments because plaintiff's attorney had a charging lien that was superior to the City's setoff rights. Id. The court also held that it was inequitable to stop payment because the "the City is held to the same procedural standards as any other party" and "[a] fiscal crisis is no excuse for high-handed governmental action and abuse of legal process." Id. at 1017. Lopez, however, is completely distinguishable. First, Lopez denied setoff because of the priority of an attorney's charging lien over the City's setoff rights—there is no superior charging lien here. Second, in Lopez, the City had already issued the check and sought to stop payment—here, the City followed the proper procedures by exercising its right of setoff prior to issuing the check.

Plaintiff's new arguments is granted in part and denied in part.[8]  (Docket entry no. 121.)  This Memorandum Order resolves docket entry nos. 116 and 121.

       SO ORDERED.

Dated: New York, New York
       March 31, 2025

                                /s/ Laura Taylor Swain
                                LAURA TAYLOR SWAIN
                                Chief United States District Judge

---

[8] This motion is granted insofar as the Court has considered the arguments made in Defendant's motion (docket entry no. 121), as well as the arguments made in Plaintiff's response in opposition to Defendant's motion (docket entry no. 122).  The motion is otherwise denied as moot, in light of this Memorandum Order.